1  KEMNITZER, ANDERSON, BARRON & OGILVIE, LLP
   Mark F. Anderson (CA SBN 44787)
2  Kan Tung Donohoe (CA SBN 197785)
   445 Bush Street, Sixth Floor
3  San Francisco, CA 94108
4  Telephone: (415) 861-2265
   Fax: (415) 861-3151
5  Email: mark@kabolaw.com
   Attorney for Plaintiff Mark R Ciabattari and all others similarly situated
6

7  SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
   James E. Miller (CT SBN 420518)
8  65 Main Street
   Chester, CT 06412
9  Telephone: (860) 526-1100
   Fax: (860) 526-1120
10 Email: jmiller@classactioncounsel.com
11 Attorney for Plaintiff and all others similarly situated

12 BERNSTEIN NACKMAN & FEINBERG
   Jeffrey S. Feinberg (NY SBN 4051165)
13 67 Wall Street, 22nd Floor
   New York, NY 10005
14 Telephone: (212) 709-8229
15 Fax: (212) 943-2300
   Email: jfeinberg@jsf-law.net
16 Attorney for Plaintiff and all others similarly situated

17                    UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark R Ciabattari, and all other persons similarly situated, | Case No. C-05-04289 SC |
| Plaintiffs, | CLASS ACTION |
| vs. | STIPULATION FOR LEAVE TO FILE PLAINTIFF'S FIRST AMENDED COMPLAINT AND (PROPOSED) ORDER |
| Toyota Motor Sales, U.S.A., Inc., a California corporation, et al, | |
| Defendants. | |

    Whereas, the parties have tentatively reached a nationwide settlement of this and related actions;

    Whereas, the parties plan to ask this Court for approval of the nationwide settlement

Stip & Order for Leave to File First Amended Complaint, *Ciabattari v Toyota Motor Sales et al, Case No C05-04289 SC*

1 | pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2 |     Whereas, this action concerns alleged defects in the "run-flat" tires Toyota purchased for
3 | use on its Sienna All Wheel Drive model vehicles;

4 |     Whereas, there were two suppliers of such tires and one of them, Bridgestone Firestone
5 | North America, LLC is not now a defendant in this action;

6 |     Whereas, Toyota North America, Inc., which is a holding company, was named as a
7 | defendant in certain of the related actions;

8 |     Whereas, Bridgestone is a party to the tentative nationwide settlement;

9 |     Whereas, neither Bridgestone nor Toyota North America, Inc. are parties to this action at
10 | this time;

11 |     Whereas, adding Bridgestone to this action will help facilitate settlement of related
12 | actions in which it currently is a defendant, an action that is being taken with Bridgestone's
13 | consent;

14 |     Whereas, adding Toyota North America, Inc. will help facilitate settlement of the related
15 | actions in which it has been named a defendant, an action that is being taken with Toyota North
16 | America Inc.'s consent;

17 |     Whereas, the addition of the two new parties will not delay the process of court approval
18 | of the settlement of this and related actions;

19 |     IT IS HEREBY STIPULATED, by and between counsel, that the plaintiff may be
20 | granted leave to file his First Amended Complaint, a copy of which is attached as Exhibit "A."

21 | Dated: June 20, 2006      KEMNITZER, ANDERSON, BARRON & OGILVIE LLP

22 |      By    /s/ Mark F Anderson
23 |            Mark F Anderson
           Attorney for Plaintiff & the Class

24 | Dated: June 20, 2006      WILSON, ELSER, MOSKOWITZ, EDELMAN,
25 |      & DICKER LLP

26 |      By    /s/ Ralph Robinson
27 |            Ralph Robinson
           Attorney for Defendant Goodyear Dunlop
28 |            Tires North America, Ltd.

| | | |
|---|---|---|
| 1 | Dated: June 20, 2006 | O'MELVENY & MYERS LLP |
| 2 | | By   /s/ Thomas M Riordan |
| 3 | | Thomas M Riordan |
| | | Attorney for Defendants Toyota North America, Inc |
| 4 | | & Toyota Motor Sales, U.S.A., Inc |

**Order Granting Plaintiff Leave to file the First Amended Complaint**

Based upon the parties' stipulation and for good cause shown, plaintiff is hereby granted leave to file his First Amended Complaint.

Dated: June 26, 2006.

_____
Samuel C.
Th[ IT IS SO ORDERED ]
Judge Samuel Conti

*United States District Court, Northern District of California*

Stip & Order for Leave to File First Amended Complaint, *Ciabattari v Toyota Motor Sales et al, Case No C05-04289 SC*

| | |
|---|---|
| 1 | KEMNITZER, ANDERSON, BARRON & OGILVIE, LLP |
| | Mark F. Anderson (CA SBN 44787) |
| 2 | Kan Tung Donohoe (CA SBN 197785) |
| 3 | 445 Bush Street, Sixth Floor |
| | San Francisco, CA 94108 |
| 4 | Telephone: (415) 861-2265 |
| | Fax: (415) 861-3151 |
| 5 | Email: mark@kabolaw.com |
| 6 | Attorney for Plaintiff Mark R Ciabattari and all others similarly situated |
| 7 | SHEPHERD, FINKELMAN, MILLER & SHAH, LLC |
| | James E. Miller (CT SBN 420518) |
| 8 | 65 Main Street |
| | Chester, CT 06412 |
| 9 | Telephone: (860) 526-1100 |
| 10 | Fax: (860) 526-1120 |
| | Email: jmiller@classactioncounsel.com |
| 11 | Attorney for Plaintiff and all others similarly situated |
| 12 | BERNSTEIN NACKMAN & FEINBERG |
| | Jeffrey S. Feinberg (NY SBN 4051165) |
| 13 | 67 Wall Street, 22nd Floor |
| | New York, NY 10005 |
| 14 | Telephone: (212) 709-8229 |
| 15 | Fax: (212) 943-2300 |
| | Email: jfeinberg@jsf-law.net |
| 16 | Attorney for Plaintiff and all others similarly situated |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 19 | Mark R Ciabattari, and all other persons similarly situated, ) | Case No. C05-04289 SC |
| 20 | ) | CLASS ACTION |
| 21 | Plaintiffs, ) | FIRST AMENDED COMPLAINT FOR DAMAGES |
| 22 | vs. ) | |
| 23 | Toyota Motor Sales, U.S.A., Inc., a California corporation; ) | BREACH OF WARRANTIES |
| | ) | DEMAND FOR JURY TRIAL |
| 24 | Toyota Motor North America, Inc., ) | |
| | Goodyear Dunlop Tires North America, LLC,. ) | |
| 25 | LLC, an Ohio limited liability corporation; and ) | |
| 26 | Bridgestone Firestone North American Tire, LLC, a Delaware limited liability company, ) | |
| 27 | Defendants. ) | |
| 28 | | |

First Amended Class Action Complaint, Ciabattari v TMS        **Exhibit A**        1

**Relevant Facts Common to All Causes of Actions**

1.   This class action is brought on behalf of all current and former owners and lessees of 2004 and 2005 Toyota Sienna models LE AWD and XLE AWD (all wheel drive) minivans that came equipped with Dunlop SP™ Sport 4000 run-flat tires or with Bridgestone B380BZ run-flat tires, which minivans were leased or sold in California to California residents ("Siennas").

2.   The Siennas were sold and distributed by Toyota Motor Sales, U.S.A., Inc., a California Corporation.  Toyota Motor North America, Inc. is a holding company, collectively,   (hereafter "Toyota").

3.   The Dunlop run-flat tires were manufactured by defendant Goodyear Dunlop Tires North America, Ltd. LLC, an Ohio limited liability corporation ("Dunlop"). The Bridgestone run-flat tires were supplied by defendant Bridgestone Firestone North American Tire, LLC, a Delaware limited liability company. The run-flat tires have defects that substantially impair their use, value and safety. Since no repairs are available, the tires must be replaced. Toyota, Dunlop and Bridgestone have failed and refused to replace the tires at no charge to plaintiff and the class members. The purpose of this action is to obtain damages for plaintiff and the class to cover the cost of replacement of the Dunlop and Bridgestone tires.

**The Run-Flat Tires on the Siennas Wear Unevenly & Prematurely**

4.   Defendants Toyota, Dunlop and Bridgestone advertise the run-flat tires can be driven for up to100 miles at maximum at speeds up to 55 mph with very low or even no inflation pressure.  In other words, in the event the tire is punctured, the driver can keep on driving for up to 100 miles. Because the tires may be run without air pressure, the Siennas are equipped with a warning system to alert the driver when the air pressure is low.

5.   Under ordinary conditions and use, the run-flat tires on the subject vehicles develop uneven wear and cupping after as few as 9,000 miles. The run-flat tires on the average Sienna become completely worn and must be replaced after only 15,000 miles of wear. Virtually all the run-flat tires on the Siennas must be replaced within 20,000 miles.  Toyota failed to design the Sienna in such a way as to avoid undue tire wear.

6.   Neither Dunlop, Bridgestone nor Toyota warrants that the run-flat tires will last a certain

number of miles; however, defendant Dunlop certifies that the tires on the Siennas have a tread ware rating of 360. Defendant Bridgestone certifies that its tires have a certain tread wear rating. Tread wear is defined as the quickness of wear based on the driver's expectations.

7. The higher the tread wear number, the longer it takes for the tread to wear down. For example, a tire graded 360 should last 3.6 times as long as a tire graded 100.

8. Tires currently offered by Dunlop have wear ratings ranging from a low of 160 to a high of 560. The run flat tires wear rating of 360 is therefore in the middle range.

9. Plaintiff's reasonable expectation for the life of the Dunlop tires was at least 40,000 miles. Tires on his other and previously owned and comparable vehicles lasted at least 40,000 miles.

10. On August 3, 2005, plaintiff called defendant Dunlop (1 800 321 2136) and spoke to a representative, who told plaintiff that the run-flat tires have a 40,000 mile tread wear life expectancy. During the conversation, Dunlop assigned a case number to the call, number 782615.

11. Once the run-flat tires begin to wear, the tires become noisy, cause excessive vibration, and become prone to puncture and complete failure.

12. Defendants offer no repairs to the tires for uneven and premature wear, nor are there any repairs. Replacement is the only option.

13. The uneven and premature wear was not due to lack of maintenance or lack of care on the part of the drivers. Plaintiff and class members drove their Siennas using ordinary care. Plaintiff had the tires rotated at odometer readings 5,000, 10,000 and 15,000 miles, which is what is recommended by Toyota. Class members typically rotated the tires according to the Toyota recommendations.

**The Run-Flat Feature Does Not Always Work**

14. The run-flat feature does not always work. The tire can collapse dropping the rim onto the pavement. Since the subject vehicles have no spare tire, the driver is forced to have to call for a tow truck.

**When a Run-Flat Tire is Run Flat, it and the other Three Tires Must be Replaced at a Cost of About $1,200**

15. Although punctures in the Sienna run-flat tires may be repaired, when a run-flat tire goes

First Amended Class Action Complaint, Ciabattari v TMS                          **Exhibit A**        3

flat or when the tire pressure goes below 15 psi, according to defendant Toyota, the tire "**must** be replaced" and the owner cannot "use the repaired tire."

16. According to defendant Dunlop's tire warranty, if a tire has been run flat, "may have to be replaced."

17. The replacement run-flat Dunlop or Bridgestone tires retail for about $300 per tire. When one tire must be replaced all four tires must be replaced at a cost of about $1,200.

### The Siennas Have no Spare Tire

18. The subject vehicles do not come with a spare tire. Merely swapping a ruined run-flat tire with a spare is not an option. The place for a spare tire is taken up by the all wheel drive mechanism, which is one reason Toyota eliminated the spare tire. However, some Toyota marketing materials provided information about the location of the spare tire. Beginning in April 2005, Toyota dealers began offering a spare tire kit at an extra charge, but if it is installed, the rear third seat cannot be folded down to allow for a flat cargo area.

### The Parties

19. Plaintiff Mark A Ciabattari was a buyer within the meaning of Civil Code § 1791(b) Commercial Code § 2103. Plaintiff purchased the Sienna for his personal and family use. At the time plaintiff purchased the Sienna and at the time of the filing of this action, plaintiff was a resident of Pleasant Hill, California.

20. Defendant Goodyear Dunlop Tires North America, Ltd. LTD (Dunlop) is an Ohio limited liability corporation which has its principal place of business in Akron, Ohio.

21. Defendant Toyota Motor Sales, U.S.A., Inc. is a California corporation (Toyota) that has its principal place of business in Torrance, California.

22. Defendant Toyota Motor North America, Inc. is a holding company with it's headquarter in New York, New York.

23. Defendant Bridgestone Firestone North American, LLC, a Delaware limited liability company that has its principal place of business in Nashville, TN.

### Jurisdiction and Venue

24. This Court has jurisdiction pursuant to 28 U.S.C.A. Section 1332.

25. Venue is proper pursuant to 28 U.S.C.A. Section 1391(a). Plaintiff purchased his Sienna within this district.

**Agency**

26. Each of the defendants, whether actually named or fictitiously named, was the agent of the other defendants, whether actually named or fictitiously named, and each other and was at all times acting within the purpose and scope of such agency.

**Plaintiff's Experience with the Run-Flat Tires**

27. On December 1, 2003, plaintiff and his spouse purchased a new 2004 Toyota Sienna LE AWD, VIN5TDBA22C44S011109, from Dublin Toyota, Dublin, CA, a franchised Toyota dealer, under a written contract of sale under which plaintiffs agreed to pay $39,889.28, including tax & license.

28. Plaintiff Mark Ciabattari brought his Sienna to Concord Toyota, an authorized Toyota repair facility on the following dates at which time the dealership rotated his tires: a) 7/8/04 @ odometer 4,986, b) 12/17/04 @ 10,854, and c) 2/16/05 @ odometer 13,513. During the 2/16/05 visit to Concord Toyota, plaintiff complained that the tires were causing excessive noise. The dealer reported that the vehicle needed alignment and so performed a four wheel alignment.

29. On July 8, 2005, at odometer 19,534, plaintiff brought his Sienna in for maintenance to Walnut Creek Toyota. That dealership informed that the Dunlop tires had only 10% tread left and that the outer edges were worn down to the cords and that the tires would need to be replaced.

30. On July 25, 2005, plaintiff called defendant Toyota's 800 number. A representative assigned plaintiff a case number, 200507230068. The representative asked plaintiff to call Walnut Creek Toyota to see about getting new replacement tires.

31. On July 27, 2005, plaintiff talked to the Walnut Creek service manager and then faxed copies of his tire rotation records to him for his review. On July 28, 2005, the service manager called to say that his "good will" would only allow him to replace one tire and to provide an alignment. He also stated Walnut Creek would not do anything further because he did purchase the Sienna there. Plaintiff then called defendant Toyota; a representative told him to contact Concord Toyota.

32. As mentioned above, on August 3, 2005, plaintiff called defendant Dunlop's 800 number; a representative stated that the subject tires have a 40,000 mile tread wear life expectancy. The Dunlop representative offered no meaningful relief.

33. On August 3, 2005, after conferring with defendant Toyota's representative, Concord Toyota offered to replace two of the four tires on the Sienna at no charge on a "one time" only basis. Plaintiff would have to pay for the other two tires.

34. On August 10, 2005, plaintiff took his Sienna to Concord Toyota. The dealer opened RO 280607 and recorded that plaintiff was complaining that the tires were "wearing fast." The dealer stated that the cause was "abnormal wear." The dealer replaced all four tires with plaintiff having to pay for two of the tires (under protest) at a cost to him of $489.39.

35. Plaintiff replaced the tires with ordinary tires, not run-flat tires.

36. Besides the fact that all four tires were worn, plaintiff had to replace all four tires because defendant Toyota's instructions are that all four tires must be replaced at the same time even if only one is in need of replacement.

**The Toyota and Dunlop Express Warranties**

37. Defendant Toyota provided plaintiff and the class members an express, written warranty on the Siennas, in effect for 36,000 miles or 36 months, bumper to bumper, whichever comes first.

38. Defendant Toyota warranted that the Siennas were free of all defects in materials and workmanship and if any defect was discovered within the warranty period, Toyota would provide for repair of the vehicle free of charge to the plaintiffs. Plaintiff has met all of the obligations and the preconditions of the express warranty.

39. Defendant Dunlop provided plaintiff and class members an express, written warranty on the run-flat tires on the Siennas. The warranty states that any new Dunlop SP Sport 4000 DSST tire removed from service due to a covered warranty condition or rendered not repairable due to a road hazard injury during the first 2/32" tread wear or 12 months from date of purchase, whichever occurs first, will be replaced free of charge with mounting and balancing included. A tire not eligible for no-charge replacement that is removed from service due to a covered warranty condition or not repairable due to a road hazard injury will be replaced on a prorated basis. Replacement price

First Amended Class Action Complaint, Ciabattari v TMS          **Exhibit A**     6

is calculated by multiplying the tire's advertised retailer selling price at the time of adjustment by the percentage of usable original tread that has been worn off. The Dunlop warranty coverage ends and the tires have delivered their full original tread life.

40. Defendant Bridgestone provided class members an express warranty on the run-flat tires it supplied to Toyota for use on the Sienna AWD models.

**Implied Warranties of Merchantability**

41. Defendant Toyota was a merchant in the sales of the Siennas. Defendant Toyota provided plaintiff and class members an implied warranty that the tires were merchantable and fit for their ordinary uses, including having a tread life of 40,000 miles, would not wear unevenly, and would not cause noise and vibration. The duration of the implied warranties is one year from the date of delivery.

42. Defendant Dunlop was a merchant in the sales of the run-flat tires. Defendant Dunlop provided plaintiff and class members an implied warranty that the tires were merchantable and fit for their ordinary uses, including having a tread life of 40,000 miles, would not wear unevenly, and would not cause noise and vibration. The duration of the implied warranties is one year from the date of delivery.

43. Defendant Bridgestone was a merchant in the sale of its run-flat tires it supplied to Toyota for use on the Sienna AWD models. Bridgestone provided class members an implied warranty that the tires were merchantable and fit for their ordinary uses, including having a tread life of 40,000 miles, would not wear unevenly, and would not cause noise and vibration. The duration of the implied warranties is one year from the date of delivery.

**Toyota, Dunlop and Bridgestone Breached the Express & Implied Warranties on the Tires**

44. Toyota has breached its express and the implied warranty on the tires. Since no repairs are available, Toyota was obligated to replace the tires free of charge, but has refused to do so.

45. Dunlop has breached its express and the implied warranty on the tires. Since no repairs are available, Toyota was obligated to replace the tires free of charge, but has refused to do so.

46. Bridgestone has breached its express and the implied warranty on the tires. Since no repairs are available, Toyota was obligated to replace the tires free of charge, but has refused to do so.

**Class Allegations**

47.  Plaintiff brings this action on behalf of all current and former owners and lessees of 2004 and 2005 Toyota Sienna models LE AWD and XLE AWD (all wheel drive) minivans equipped with run-flat Dunlop SP™ Sport 4000 DSST or Bridgestone B380BZ, sold or leased to residents of the United States , excluding any person related to or affiliated with Toyota, Dunlop or Bridgestone or any of its franchised dealers or any person who has experienced physical injury or property damage as a result of the defect or defects at issue in this litigation.

48.  The class is so numerous that joinder of all members is impracticable.  Plaintiff estimates there may be as many as 4,000 class members who purchased or leased 2004 and 2005 Siennas with Dunlop or Bridgestone run-flat tires from California Toyota dealers.

49.  Common questions of law and fact exist as to all members of the class and predominate over any individual issues.  These common legal and factual questions include, but are not limited to, the following:

a) Whether Toyota breached the implied warranty on the run-flat tires;

b) Whether Toyota breached the express warranty on the Siennas;

c) Whether Dunlop breached the implied warranty on its run-flat tires;

d) Whether Dunlop breached its express warranty on its run-flat tires;

e) Whether Bridgestone breached the implied warranty on its run-flat tires;

f) Whether Bridgestone breached the express warranty on its run-flat tires;

g) Whether the class members are entitled to compensatory damages measured by the cost of replacement tires;

h) Whether the class members are entitled to compensatory damages measured by the difference in actual value of their Siennas and the value as warranted;

i) Whether Toyota's active concealment of and failure to disclose the factual matters alleged in this complaint is unfair within the meaning of UCL, in that the harm to consumers and the public of such conduct outweighs its benefits;

j) Whether Toyota violated California's secret warranty statute, Civil Code § 1795.90 <u>et</u> <u>seq.</u>

k) Whether Toyota should be should be declared financially responsible for notifying all class members of free replacement tires pursuant to its secret warranty; and

l) Whether Toyota should be ordered to disgorge, for the benefit of the class, all or part of its ill-gotten profits received from plaintiff and class members as a result of its failure to provide replacement tires to consumers free of charge or to make restitution to plaintiff and the members of the class.

50. Plaintiff's claims are typical of the claims of the class. Each class member's claims arise from the same course of events, each class member makes the same legal arguments to prove defendants' liability, and the interests of all class members are aligned.

51. Plaintiff will fairly and adequately protect the interests of the class. The interests of plaintiff and members of the class are aligned, not antagonistic. Those interests are to establish the liability of defendants and obtain the relief sought in this action. Plaintiff has retained qualified and experienced counsel to pursue this litigation. Plaintiff's counsel are experienced in representing consumer in breach of warranty ("lemon law") cases and in representing consumers in consumer class actions.

52. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants.

53. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein.

**COUNT ONE**
Breach of Implied Warranties under the Song-Beverly Consumer Warranty Act,
California Civil Code § 1792--Against Defendants Toyota, Dunlop, and Bridgestone on Behalf of Plaintiff & the Class

54. Plaintiff incorporates and realleges each and every allegation of ¶¶ 1-53.

55. Plaintiff purchased his Sienna with the reasonable expectation that the tires would last at least 40,000 miles, would not wear unevenly and would not cause vibration.

56. However, the tires were not fit for their ordinary and intended purpose of providing plaintiff with reliable, durable, safe tires and were in fact defective.

57. When defendants manufactured and sold the tires, defendants knew that the intended and ordinary purposes of the tires were to provide buyers with reliable, durable and safe tires.

58. At all times, plaintiff drove the Sienna for its intended and ordinary purposes of transportation.

59. No repairs are available to fix these tires. The only way defendants could remedy what would otherwise be a breach of warranty would be to replace the tires free of charge; however, defendants each failed and refused to do so in spite of demand.

60. Plaintiff has performed each and every duty required of them under the terms of the warranty agreements, and under the provisions of the Song-Beverly Consumer Warranty Act, except as may have been excused or prevented by the conduct of defendants.

61. Defendants' breaches of the implied warranty as described herein constitute a violation of the Song-Beverly Act, California Civil Code § 1792.

62. As a legal result, plaintiff has suffered actual, consequential and incidental damages. Defendants are liable for damages pursuant to Civil Code § 1794.

63. Under California Civil Code § 1794(d), plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorneys' fees.  As a legal result of defendants' misconduct as alleged herein, and in an effort to protect their rights, plaintiff has incurred and continues to incur legal fees, costs, and expenses in connection therewith.

**COUNT TWO**
Breach of Express Warranty under the Song-Beverly Consumer Warranty Act - Civil Code §§ 1793.2(d), 1794--Against Defendants Toyota, Dunlop, and Bridgestone on behalf of Plaintiff and the Class

64. Plaintiff incorporates and realleges each and every allegation of ¶¶ 1-63.

65. As an express warrantor and manufacturer, Toyota, Dunlop and Bridgestone had certain obligations under the Song-Beverly Consumer Warranty Act, California Civil Code § 1790, et seq. and in particular Civil Code § 1793.2 (d) to conform the tires to the express warranty.

66. Toyota, Dunlop and Bridgestone have failed and refused to conform the tires to the express

warranty. Plaintiff and the class members have been damaged by defendants' breach of express warranty.

67. Toyota, Dunlop and Bridgestone are obligated to pay damages pursuant to Civil Code § 1794.

68. Plaintiff asked defendant defendants to conform the tires to the warranty by providing replacement tires, but defendants refused to do so. This was a willful breach of the express warranty and defendants are therefore liable for not only damages, but also a civil penalty pursuant to Civil Code § 1794.

**COUNT THREE**
Breach of Express Warranty under the California Commercial Code—
Against Toyota, Dunlop, and Bridgestone on Behalf of Plaintiff & the Class

69. Plaintiff incorporates and realleges each and every allegation of ¶¶ 1-68.

70. Plaintiff has performed each and every duty required of him under the terms of the warranty agreement, and under the provisions of Article 2 of the California Commercial Code, except as may have been excused or prevented by the conduct of defendant.

71. Defendants' breach of the express warranty as described herein constitutes a violation of Article 2 of the California Commercial Code.

72. As a legal result, plaintiff and the class members have suffered damages pursuant to Commercial Code §§ 2714 and 2715.

**COUNT FOUR**
Violation of the California Business & Professions Code § 17200---
Against Toyota on behalf of Plaintiff and the Class

73. Plaintiff incorporates and realleges each and every allegation of ¶¶ 1-72.

74. Business and Professions Code §17200, <u>et seq</u>., the Unfair Competition Law, ("UCL"), defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL authorizes any person who has suffered injury in fact and has lost money or property as a result of such unfair competition to bring an action for relief under the statute acting in the interests of the general public. Plaintiff has suffered injury in fact and has lost money as a result of defendant Toyota's violation of the UCL.

75. As described in the factual allegations above, defendant Toyota engaged in the following practices which constitute "unfair competition" as defined in Business and Professions Code §17200 et seq.:

(i)   Defendant Toyota failed to disclose to buyers that the subject Siennas had tires that would not last more than 15,000 miles on average, would wear unevenly, and would be noisy and cause vibration;

(ii)  Defendant Toyota failed to disclose that the subject Siennas did not come with a spare tire;

(iii) Defendant Toyota failed to disclose, except in the owner's manual, which no one has access to until after the purchase, that when the run-flat tire is driven with no or low air pressure, it must be replaced because it is not repairable;

(iv)  Defendant Toyota failed to disclose that when one run-flat tire needs to be replaced, all four tires have to be replaced at the same time (at a cost of about $1,200);

(v)   Defendant Toyota failed to disclose that the run-flat feature on the Dunlop tires does not always work which means the driver has to call a tow truck while stranded beside a road with no spare tire to use; and

(vi)  Defendant Toyota failed to disclose that when a buyer makes a warranty claim to replace the run-flat tires, Toyota will inevitably "point the finger" and blame the tire company and when the buyer calls the tire company, the tire company will blame Toyota and make only a token offer of an "adjustment;"

76. Defendant Toyota's above-described acts and practices were "fraudulent", "unlawful, and "deceptive" as those terms are used in Business and Professions Code §17200.

77. Defendant Toyota's business acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers. The business acts and practices of defendant as alleged also constitute fraudulent business practices in that the acts and practices are likely to deceive members of the public and the class members.

78. The acts of defendant Toyota as herein described present a continuing threat to plaintiff and

class members in that Toyota will continue to engage in these deceptive, unfair and unlawful business practices and will not cease doing so unless and until an injunction is issued by this court.

79. As a legal result of the aforementioned acts, defendant Toyota has unlawfully, unfairly and unjustly collected and continue to hold profit derived directly or indirectly from affected members of the general public, including plaintiff and class members who have been victimized by the practices challenged herein. Such funds properly belong to the effected members of the public including the members of the proposed members of the class in this action and constitute ill-gotten gains subject to an order of restitution/disgorgement. Defendant Toyota has failed to provide restitution for this profit that does not properly belong to them.

80. In accordance with the provisions of Business & Professions Code §§17200 and 17203, plaintiff and the class are entitled to an order enjoining the unlawful, unfair, deceptive and/or fraudulent acts as described herein; and directing defendant Toyota to make full restitution to all persons who have suffered from such acts and a disgorgement of its ill-gotten gains.

81. Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

(i)   A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive leasing practices, by preventing consumer fraud and by maintaining the integrity of institutions that sell and finance motor vehicles in this state who might otherwise be tempted to engage in deceptive, unfair, and unlawful practices;

(ii)  This action will result in a significant public benefit by causing the disgorgement of <u>profit</u> improperly collected and retained by defendants, together with interest on that money and through the issuance of an injunction against unlawful, unfair, and deceptive business practices.

(iii) Unless this complaint is prosecuted, the defendants' activities will go unremedied and will continue; automotive consumers in the State of California will not recover money properly

belonging to them; the deception is difficult to detect; and many consumers would not be aware that they were damaged by defendants' wrongful practices;

(iv)   Plaintiff is an individual of moderate means with limited access to the courts and the civil justice system; unless attorneys' fees, costs and expenses are awarded against defendant Toyota, he will not recover the full measure of their loss.

**COUNT FIVE**
Violation of the California Business & Professions Code § 17200 and Civil Code § 1795.90 et seq----Against Toyota on behalf of Plaintiff and the Class

82. Plaintiff incorporates and realleges each and every allegation of ¶¶ 1-81.

83. Plaintiff made extraordinary efforts to get defendant Toyota to replace the defective run-flat tires.

84.  Defendant Toyota's business acts and practices alleged herein are unlawful under Business & Professions Code §17200 et seq based on the fact that defendant Toyota has failed to comply with Civil Code §1795.90 et seq.

85. Toyota has adopted a secret warranty and policy of selectively providing some Sienna owners and lessees one or two replacement tires (or in rare cases three tires) in those cases in which buyers make strenuous efforts to get Toyota to pay for needed new run-flat tires.

86. In direct contravention of Civil Code §1795.92, Toyota has not affirmatively notified by first-class mail all affected Sienna owners and lessees of the free tires' availability as provided by Toyota's secret warranty, nor has Toyota implemented an appropriate procedure for reimbursing affected Sienna owners and lessees who previously paid for replacement tires, including the cost of installation and alignment, as required by law.

87. Toyota's unlawful business acts and practices continue with through the date of this complaint's filing and, absent a Court order, Toyota will not comply with Civil Code §1795.92.

88. Under Business & Professions Code §17203, plaintiff, on his own and on behalf of all members of the class, seek a court order requiring Toyota to immediately cease the above-described acts of unfair competition and for all further relief under Business & Professions Code §17203 consistent with Civil Code §1795.90 et seq.

**JURY DEMAND**

89. Plaintiff demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER**

WHEREFORE, plaintiff prays for judgment as follows:

A. For compensatory damages, which exceed $25,000;

B. On the Song Beverly Consumer Warranty Act, Breach of Express Warranty Causes of Action, a civil penalty of two times damages;

C. On the UCL causes of action, restitution, and an injunction;

D. Prejudgment interest;

E. Attorney's fees, expenses and costs;

F. For such other and further relief as the court may deem proper.

Dated: June 20, 2006            KEMNITZER, ANDERSON, BARRON & OGILVIE LLP


By:   /s/Mark F Anderson
      Attorney for Plaintiff & the Class

First Amended Class Action Complaint, Ciabattari v TMS                    **Exhibit A**     15